FILED

06 SEP 21 AM 8:44

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY:    DEPUTY

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br><br>VERN D. BLANCHARD dba AMERICAN MULTI-SYSTEMS<br><br>　　　　　　　　　　　　Debtor,<br><br>SCOTT A. McMILLAN,<br><br>　　　　　　　　　　　　Movant,<br><br>vs.<br><br>VERN D. BLANCHARD dba AMERICAN MULTI-SYSTEMS,<br><br>　　　　　　　　　　　　Respondent. | CASE NO. 06cv0146-LAB (WMc)<br><br>[Related Case 06cv0580-LAB (WMc)]<br><br>**(1) ORDER GRANTING MOTION TO STRIKE POST-APPEAL DOCUMENT EXHIBITS; AND**<br><br>**(2) ORDER AFFIRMING IN PART AND REVERSING IN PART BANKRUPTCY COURT'S ORDER AWARDING SPECIAL COUNSEL ATTORNEYS' FEES AND REMANDING FOR AMENDED FEE AWARD**<br><br>[Dkt Nos. 1, 22] |

Cross-appeals from a decision of the Bankruptcy Court in <u>In re Vern D. Blanchard dba American Multi-Systems</u>, Case No. 96-12037-H7, came before the court for hearing on September 18, 2006. Charles M. Kagay, Esq. appeared for appellant Scott A. McMillan, Esq. ("McMillan"), special counsel to trustee James L. Kennedy ("the Trustee") in the underlying bankruptcy action. Cross-appellant and debtor Vern Blanchard ("Blanchard") appeared *pro se*. Gary

1  B. Rudolph, Esq. appeared for the Trustee. As memorialized below, in consideration of the papers submitted, pertinent legal authority, and argument at the hearing, the court **AFFIRMS** Bankruptcy Judge John J. Hargrove's December 19, 2005 Memorandum Decision awarding McMillan attorneys' fees and his January 9, 2006 Order formalizing that decision, except with respect to the amount of the fees awarded and the base amount upon which to calculate McMillan's 50% contingency fee award, which findings are **REVERSED**. Disposition of Blanchard's cross-appeal of the same Order is set forth in a separate Order by the undersigned District Judge in the related case (Case No. 06cv580-LAB(WMc)).

McMillan filed his appeal of the Bankruptcy Court's Order awarding him attorneys' fees for his representation as Special Counsel to the Trustee in Blanchard's Chapter 7 bankruptcy proceedings. He contends Judge Hargrove misapplied Bankruptcy Code §§ 328, 330 and erred in awarding attorneys' fees in an amount purportedly lower than McMillan's expectation under the Contingency Fee Agreement. The Trustee was permitted to file briefing associated with the cross-appeals. The Trustee argues the Memorandum Decision and Order correctly decided the fee calculation method, except for the exclusion of McMillan's administrative claim against the bankruptcy estate from the base amount against which the Contingency Fee Agreement 50% award should be applied. This court has jurisdiction over appeals of the fee award Order under 28 U.S.C. § 158(a)(1) (appeals "from final . . . orders . . . .").

The same standards of review apply in a bankruptcy appeal as in any other federal appeal. Findings of fact are reviewed under the "clearly erroneous" standard. In re Eastman, 188 B.R. 621, 624 (B.A.P. 9th Cir. (Cal.) 1995); FED. R. BANKR. P. ("Rule") 8013. A bankruptcy court's finding is "clearly erroneous" when the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made. Banks v. Gill Distribution Centers, Inc., 263 F.3d 862, 869 (9th Cir. 2001). Conclusions of law are reviewed *de novo*. In re Eastman, 188 B.R. at 624; In re B.U.M. International, Inc., 229 F.3d 824 (9th Cir. 2000) (bankruptcy court's interpretation of applicable law is reviewed *de novo*, its findings of fact are reviewed for clear error, and its decision on the amount of fees to be awarded is reviewed for an abuse of discretion). Decisions involving the exercise of a bankruptcy court's discretion are reviewed for "abuse of discretion." In re Ridill, 1 B.R.

216, 218 (Bankr. D.C.Cal. 1979). A court abuses its discretion by basing its decision on an erroneous view of the law or a clearly erroneous assessment of the evidence. In re Lopez, 192 B.R. 539, 543 (9th Cir. (Cal.) 1996).

The Bankruptcy Court approved a Contingency Fee Agreement between the Trustee and McMillan when he was appointed as Special Counsel, by Order entered December 20, 2001, including recitations in the appointment Order: "(2) **That the Contingency Fee Agreement attached hereto as Exhibit 'A,' and herein incorporated by reference is hereby *approved***," and "(3) That compensation to Scott A. McMillan, Esq., for professional services rendered on behalf of the trustee shall, ***subject to further court approval*** **after due notice and hearing, and subject to the provisions of Bankruptcy Code Sections 328 *and 330*, be on a contingent fee basis as follows . . . ;**" and (5) "That costs, expenses and disbursements advanced by Scott A. McMillan, Esq., will be reimbursed to McMillan pursuant to the Contingent Fee Agreement, **and upon notice to creditors and a Court order approving its fees and costs has been entered.**" McMillan's Appendix Of Portions Of Record ("McMillan's Appendix"), pp. 53-60 (emphasis added).

McMillan successfully recovered substantial assets for the estate in the adversary proceeding. His efforts transformed an estate with no assets into a solvent estate with cash, real estate, and securities collectively valued at over $5 million. McMillan Opening Brief pp. 6-7. He secured defaults and default judgments against all defendants in the adversary proceeding, successfully defended four appeals, and defeated a motion to stay enforcement of the judgments. McMillan then filed an Application For First Interim Fees And Costs on October 20, 2005, seeking an award of fees estimated to be "around $2.7 million," in reliance on his Contingent Fee Agreement he construes as entitling him to "50% [of the value of the assets] he brought into the Estate," even though "most of those assets have not yet been been monetized." McMillan's Appendix, pp. 22-36, 25, pp. 40-51.

The Trustee filed a Request For Clarification Concerning Fee Application. Id. pp. 69-70. The Trustee had a concurrently pending Petition For Instructions associated with the his motion for an Order directing liquidation of the estate. The Petition listed the Special Counsel's attorneys' fees as one of seven enumerated claims against the estate totaling approximately $1,891,092.00. See Id., pp. 2-4. The Trustee identified as the "primary asset of the estate" its stock interest in Gametech, Inc., the

liquidation of which the Trustee calculated would satisfy all the claims against the estate. The Trustee's estimate of McMillan's compensation was computed as "50% of recovery . . . based on the projected distribution" to satisfy the claims against the estate. Id. p. 3. The Trustee sought approval from the court to liquidate only "assets sufficient to pay the [seven] claims" listed in his liquidation motion "regardless of the fact that the estate has a judgment against the Debtor, and his relatives and his related trusts in the amount of $14,631,640.00." Id. The Trustee believed the estate to be solvent, "and liquidating assets beyond the amount necessary to pay claims is unnecessary in light of the fact that the assets would come from the Debtor, his relatives and related trusts and then be returned to the Debtor as a surplus estate," as well as entailing more costs to the estate, increased Chapter 7 administrative fees, and a delay in closing the estate. Id. pp. 3, 4 ("Therefore, the Trustee seeks instructions and requests that an order be entered that pursuant to 11 U.S.C. Section 704, he is required to liquidate assets of the estate in an amount <u>only</u> necessary to pay the claims set forth above in paragraphs 1-7").

Bankruptcy Judge John J. Hargrove held a hearing on McMillan's fee application. He issued a Memorandum Decision on December 20, 2005 and entered an Order on January 9, 2006. Judge Hargrove awarded McMillan fees calculated as 50% of the proceeds necessary to pay creditor claims, less McMillan's own claim against the estate, or approximately $700,000.00. Judge Hargrove found an award totaling 50% of the total value of assets recovered to be unreasonable in consideration of the resulting surplus estate and the interference with the Trustee's duty to expeditiously close the estate, among other things.[1]

As pertinent to the issues McMillan raises in his appeal, Judge Hargrove invoked the discretion accorded the court under Section 330 of the Bankruptcy Code to review the reasonableness of professional fee awards for services provided to the bankruptcy estate. Bankruptcy Code § 328 is a limitation on the § 330. Section 328 provides that a court's pre-approval of the trustee's employment

---

[1] In consideration of the Trustee's representation that Blanchard's estate is solvent, and applying In re Riverside-Linden Inv. Co., 85 B.R. 107, 111 (Bankr. S.D. Cal. 1988), aff'd 295 F.2d 320 (9th Cir. 1991), the court awarded McMillan "Chapter 7 administrative fees as special counsel to the Trustee in the amount of **50% of the property necessary to pay creditor claims** plus interest as well as administrative expenses **exclusive of his own fee award**." McMillan's Appendix Of Portions Of Record ("McMillan's Appendix"), 115-117 (emphasis added).

and compensation arrangements with a professional person, including contingency fee agreements, requires the court to allow payment of the agreed compensation without further reasonableness analysis under Section 330, unless the originally-approved terms and conditions "prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions." Bankr. Code § 328(a). McMillan argues on appeal he had such an approved compensation agreement, and the Bankruptcy Court erred in applying Section 330 reasonableness analysis to reduce the amount of his compensation to less than he contends he bargained for in the Contingency Fee Agreement. He contends error occurred both in the court's construction of "all gross sums received" as the basis against which to calculate his agreed-recovery of "50% of any recovery obtained" and in the court's deduction of his own fees (an administrative claim against the estate) from the calculation basis. He disputes that the court can limit the agreed "50% of any recovery obtained" to mean "any *liquidated* recovery." McMillan recovered about $5 million in assets available to the bankruptcy estate. He claims his fees should be calculated as 50% of that figure, even though the unliquidated portion of those assets not needed to satisfy creditor claims and the excess value of liquidated assets will revert to the Debtor when the estate is closed. The fee award Judge Hargrove approved totals about one-third of McMillan's claimed entitlement.

The Trustee concurs that McMillan's calculation is the correct approach, rather than the formula the Bankruptcy Court used, but disputes McMillan's definition of the gross-sums-collected basis against which to apply the 50% recovery.

> Appellee actually agrees with appellant that he is entitled to 50% of the gross sums recovered. The difference is in determining the gross sums collected. Appellee argues that that amount is ascertainable by the actual sums collected, to wit [approximately] 3,637,270.80. It is not based on real property that has not been liquidated by the Trustee but whose ownership interest vis-a-vis the estate is in significant dispute. ¶ Accordingly, appellee agrees that Mr. McMillan is entitled to 50% of the gross sums collected less $11,000 for sanctions awarded against him, [as awarded by the Bankruptcy Court].

Trustee/Appellee's Opening Brief 9:2-8.

The Trustee does not agree with McMillan's argument that he is entitled to receive 50% of the total recovery of approximately $5 million in assets he brought into the estate, when there is no need to liquidate a significant portion of the assets in order to render the estate solvent. Nevertheless, as

noted by McMillan: "all parties participating in this appeal[2] agree that Mr. McMillan is entitled to at least" $1,807,635.40, representing "one-half the value of the assets [the Trustee] has liquidated to date." McMillan Reply 1:6-8. "The only question is whether he is entitled to more." Id. at 1:8-9.

In the Order and Memorandum Decision forming the subject matter of this appeal, the Bankruptcy Court found "ambiguity" in its Order appointing McMillan in the allusions to both Section 328 and Section 330. This court finds no clear error in that finding, and also that the inclusion of the reference to Section 330 has significance beyond a mere intent by that court to monitor and effectuate the ultimate payout of fees.[3] Accordingly, this court finds the Bankruptcy Court did not err in conducting a reasonableness review under Section 330. See In re B.U.M. International, 229 F.3d 824 (although court approved professional's employment on a contingency fee basis, court could deny fees under section 330 because employment order provided that fees were subject to court approval). The primary duties of Chapter 7 trustees are to liquidate assets of the estate and to close the estate expeditiously. See McMillan Appendix p. 11, citing Section 704(1) of the Bankruptcy Code and In re Riverside-Linden Inv. Co., 85 B.R. at 111. The Trustee represented liquidation of the Gametech stock asset alone would be sufficient to pay all claims and administrative expenses, making it likely there would be a surplus estate, so that "any further liquidation of assets recovered by McMillan will be beyond the trustee's duties." Id. at p. 12. The Bankruptcy Court's analysis included findings this court deems not clearly erroneous that: recovery of assets whose value exceeds that of the claims in the case are not "necessary to the administration of the estate," and an attorney employed to represent the interests of the estate "is not working to recover assets simply to pay his own fees."[4] The purpose

---

[2] Blanchard's arguments against awarding McMillan *any* attorneys' fees are addressed in the Order deciding his cross-appeal in Case No. 06cv0580.

[3] *See* McMillan Appendix p. 54, approving the appointment, stating: "3. That compensation to Scott A. McMillan, Esq., for professional services rendered on behalf of the trustee shall, **subject to further court approval** after due notice and hearing, ***and subject to*** the provisions of Bankruptcy Code Sections 328 and 330, be on a contingent fee basis. . . ."

[4] The Bankruptcy Court also found: "Implicit in the contingency agreement between the trustee and McMillan is that he is entitled to fees only for that property which is being liquidated for the benefit of the creditors of this estate." McMillan Appendix p. 12. The agreement language refers to "gross sums recovered." McMillan argues the recovery he obtained was anticipated to be necessary to satisfy all the estate obligations. This court does not base its ruling on any "implicit" agreement contradictory to any express term of the agreement, or on any inference the excess recovery was known at the time to be superfluous ,.

1  of bankruptcy court proceedings was accomplished when the trustee determined the estate was solvent
2  and all creditors could be satisfied in full.

3  However, this court finds the amount of the Bankruptcy Court's award arrived at by eliminating
4  McMillan's own claim against the estate from the basis against which to apply his 50% recovery was
5  an abuse of discretion. The court finds the 50% should be calculated against the approximately $ 3.6
6  million of claims against the estate, including McMillan's own administrative claim, contrary to the
7  Bankruptcy Court's conclusion on that point, as agreed by both the Trustee and McMillan. Both
8  parties contemplated an attorneys' fees award of approximately $1.8 million were McMillan to
9  successfully recover assets adequate to render the bankruptcy estate solvent as evident from the
10 Contingency Fee Agreement. At the time the Bankruptcy Court considered and (contingently)
11 approved McMillan's appointment and proposed compensation, the court appears to have expressed
12 no reservation in principle about the compensation formula.

13 The court rejects McMillan's contention his 50% fee should be calculated against the total
14 value of assets he caused to be available to the estate and finds no extra attorneys' fees should be
15 awarded based on unliquidated assets not needed to render the estate solvent. The court bases that
16 finding on the facts McMillan had to expend no extra effort to acquire the real estate and cash for the
17 estate, but rather brought the GameTech stock (whose liquidation alone was adequate to render the
18 estate solvent) and those other assets into the estate through the same proceeding, among other things.

19 The court has not considered Exhibits 4 or 5 in the Trustee/Appellee's Excerpt of Record in
20 deciding the cross-appeals. Those documents were generated in association with settlement of the
21 bankruptcy action and were filed in that action in May 2006. They formed no part of the record before
22 the Bankruptcy Court associated with the Order on appeal here. McMillan's Motion To Strike those
23 documents is accordingly **GRANTED**.

24 For the foregoing reasons, **IT IS HEREBY ORDERED**:

25 1.  McMillan's Motion To Strike Post-Appeal Documents Included In Appellee's Excerpt
26 Of Record is **GRANTED**.

27 2.  The Bankruptcy Court's Order awarding McMillan attorneys' fees is **AFFIRMED IN**
28 **PART**.

3. This court finds no clearly erroneous findings of fact nor error of law in the review process, but finds an abuse of discretion in the calculation of the fee award and **REVERSES** that portion of the Order.

4. Without setting any fixed dollar amount, McMillan shall be awarded 50% of the approximately $ 3.6 million in assets used to satisfy all creditors, including his own administrative claim against the estate, to reasonably effectuate his fee agreement bargain.

5. This matter is **REMANDED** for further proceedings consistent with this Order, if the need for further proceedings to recalculate McMillan's attorneys' fee award is not superseded by an approved settlement of the entire bankruptcy action.

**IT IS SO ORDERED.**

DATED: 9-20-06

*/s/ Larry A. Burns*

**HONORABLE LARRY ALAN BURNS**
United States District Judge

cc: MAGISTRATE JUDGE WILLIAM MCCURINE, JR.
ALL COUNSEL OF RECORD
DEBTOR, *IN PRO PER*